GREGG, Appellant,

v.

GREGG, Appellee.

[Cite as *Gregg v. Gregg* (2001), 145 Ohio App.3d 218.]

Court of Appeals of Ohio,
Twelfth District, Clermont County.

No. CA2001–01–010.

Decided Aug. 13, 2001.

*Gary A. Rosenhoffer,* for appellant.

*Charles J. Tekulve,* for appellee.

VALEN, Judge.

Plaintiff-appellant, the estate of John Gregg,[1] appeals the determination of the Clermont County Common Pleas Court abating the action for divorce and property division he filed against his wife, defendant-appellee, Catherine Gregg.

John and Catherine were married on December 18, 1985. They had no children as a result of the marriage. On October 1, 1999, John filed an action for divorce and property division on the grounds of neglect of duty, extreme cruelty, and incompatibility. John filed for divorce because he believed that Catherine, along with her son, Joey Peters, had taken part in a conspiracy in which she attempted to kill John. On September 29, 1999, Catherine had been indicted on a charge of tampering with evidence. Later, on March 1, 2000, Catherine was indicted for complicity to commit murder.

---

1. After John's death, the trial court substituted John's estate as the plaintiff in this action.

Catherine answered John's complaint for divorce and counterclaimed with her own action for divorce on the grounds of incompatibility. John requested, and was granted, exclusive occupancy of the couple's marital residence. Discovery continued in the action, and both parties disclosed and filed financial documents. John agreed to pay Catherine monthly support. The trial court retained jurisdiction to reclassify the payments in order to achieve equitable results in the final property division. Since all property was disputed, the trial court set the action for trial.

Catherine moved to stay the trial of the divorce action until her criminal trial had taken place, claiming that counsel could not allow her to testify and expose her to cross-examination while the criminal charges remained pending. John opposed the stay, suggesting in the alternative that the trial court bifurcate the proceedings by staying only "evidentiary issues relevant to a consideration of fault as such relates to property division and spousal support." John asked the court to promptly decide the issue of divorce and reserve the issues of property division and spousal support for a later date.

The trial court denied the stay. Consequently, the court did not consider John's alternate request to bifurcate the proceedings. Later, Catherine moved to continue the divorce trial. The trial court granted Catherine's motion because her criminal trial had not yet taken place. The court scheduled trial in the divorce action to begin on December 12, 2000.

On November 6, 2000, John died. Catherine filed a "suggestion of death" and a motion to abate the divorce action. Although John's estate opposed abatement, the court granted Catherine's motion to abate and dismissed the action. John's estate now appeals the trial court's order.

Assignment of Error No. 1:

"The trial court erred as a matter of law when it granted the motion to abate the divorce of John Gregg and Catherine Gregg upon the death of John Gregg."

Assignment of Error No. 2:

"The trial court committed prejudicial error and abused its discretion when it abated the divorce action filed by John Gregg."

In its first assignment of error, John's estate claims that the abatement statute, R.C. 2311.21, does not apply to a divorce action so that dismissal was an error of law. In its second assignment of error, John's estate claims that the court abused its discretion by abating the divorce after John's death because the abatement effected an injustice by allowing Catherine to inherit as John's wife. Catherine responds that abatement was appropriate as a matter of law and that it

did not constitute an abuse of discretion. Because both assignments of error are interrelated, we address them together.

The starting point for an analysis of any abatement question in Ohio is R.C. 2311.21, which gives limited, rather than wide-ranging, effect to the death of a party in the viability of an action that is pending but not finally resolved at the time of death. *Taylor v. Taylor* (July 15, 1992), Hamilton App. No. C–910126, unreported, 1992 WL 166076, at *2. R.C. 2311.21 reads:

"Unless otherwise provided, no action or proceeding pending in any court shall abate by the death of either or both parties thereto, except actions for libel, slander, malicious prosecution, for a nuisance, or against a judge of a county court for misconduct in office, which shall abate by the death of either party."

The statute makes clear that abatement is more the exception than the rule. *Taylor*, 1992 WL 166076, at *2.

However, it is well settled that an action for divorce and its concomitant permanent adjustment of property rights is one of the exceptional cases where abatement results from the death of a party, even though the statute has not explicitly recognized it. *Id.*, citing *Caprita v. Caprita* (1945), 145 Ohio St. 5, 8, 30 O.O. 238, 239, 60 N.E.2d 483, 484–485, and *Porter v. Lerch* (1934), 129 Ohio St. 47, 1 O.O. 356, 193 N.E. 766. The reason for this is that circumstance has effectively accomplished the primary objective of the lawsuit, *i.e.*, dissolution of the marital relationship. *Caprita*, 145 Ohio St. at 9, 30 O.O. at 239–240, 60 N.E.2d at 485.

Consequently, if a party to a divorce dies before trial begins and the court has not decided any of the issues, the court lacks jurisdiction to proceed in the underlying divorce action. *State ex rel. Litty v. Leskovyansky* (1996), 77 Ohio St.3d 97, 99, 671 N.E.2d 236, 239. Under those circumstances, abatement is required by law. See *Miller v. Trapp* (1984), 20 Ohio App.3d 191, 193, 20 OBR 235, 237–238, 485 N.E.2d 738, 740–741.

A divorce action will not necessarily abate, however, if a party in a divorce action dies following a decree determining property rights and granting a divorce but before journalization of the decree. *Leskovyansky*, 77 Ohio St.3d at 99, 671 N.E.2d at 239. Where the facts justifying the entry of a decree were adjudicated during the parties' lifetimes, the trial court has discretion to journalize the decree by entering a *nunc pro tunc* order. *Id.; Caprita*, 145 Ohio St. at 9, 30 O.O. at 239–240, 60 N.E.2d at 485; see, also, *Miller*, 20 Ohio App.3d at 193, 20 OBR at 237–238, 485 N.E.2d at 740–741.

John's estate argues both that abatement was inappropriate as a matter of law and that the trial court abused its discretion in abating the divorce. Accordingly, we must first determine whether an adjudication occurred. Only then do we

proceed to determine whether the trial court abused any discretion it had when it abated the divorce.

In a pretrial order issued in April 2000, the court indicated that all of the couple's property was disputed. John's pretrial memorandum, filed in May 2000, also indicates existing disputes between John and Catherine as to real estate, debts, marital property, and spousal support. John died before the scheduled divorce trial. The only adjudication that had occurred consisted of the trial court's interim award of spousal support to Catherine. That order was not a final property division but was *pendent lite*, and the court reserved jurisdiction to reclassify the payments in order to achieve an equitable result in the final property division.

Before John's death, no facts had been elicited from which the court could adjudicate these issues. The trial court had neither entered a decree of divorce nor divided any of the couple's property. Since no issues had been adjudicated or determined, the trial court had no jurisdiction to continue on with the action. Under this analysis, it is immaterial whether Catherine requested continuances to delay trial on the divorce action. The circumstances of this case place it squarely within the rule requiring abatement as a matter of law. Accordingly, the trial court had no discretion to exercise.

We understand that application of this rule renders a harsh result in this case because Catherine, who allegedly attempted to murder John, may now inherit property as his wife. But the law is clear: abatement of the action for divorce and property division was required as a matter of law because no adjudication had taken place. Appellant's first and second assignments of error are overruled.

Assignment of Error No. 3:

"The trial court committed reversible error when it refused to bifurcate the proceedings so as to grant a divorce and reserve judgment on matters related to property division."

John's estate also claims that the trial court's refusal to bifurcate the action by granting the divorce and reserving judgment on the property division constituted an abuse of discretion. Catherine responds that John's estate has failed to provide any evidence that the refusal to bifurcate constituted an abuse of the trial court's discretion.

After several continuances, Catherine requested that the trial court stay the divorce proceedings while her criminal charges remained pending. John opposed Catherine's request for a stay. Within his memorandum opposing the stay, John requested bifurcation as an alternative "if [the trial court] is leaning toward a stay" of the proceedings. In a May 3, 2000 entry, the trial court denied

Catherine's request for stay. The court did not address John's alternate request for bifurcation.

John asked the trial court to bifurcate the trial only as an alternative to granting a stay. John's opposition to the stay prevailed when the court denied Catherine's requested stay; proceedings with respect to both the divorce and the property division would continue. Once the trial court denied the stay, there was simply no reason for the trial court to entertain John's conditional request to bifurcate the proceedings, and the court acted appropriately when it did not do so. The third assignment of error is overruled.

*Judgment affirmed.*

WILLIAM W. YOUNG, P.J., and WALSH, J., concur.